IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DARREN S. BELTON,            )
                             )
            Plaintiff,       )
                             )
      v.                     )    1:23cv452
                             )
WILLIAM M. FLINT, SR.,       )
                             )
            Defendant.       )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommendation on "Defendant's Motion for Summary Judgment" (Docket Entry 21 (the "Motion") at 1).[1] For the reasons that follow, the Court should grant the Motion.

**BACKGROUND**

Alleging violations of his rights during his pretrial incarceration at the Moore County Detention Center (at times, the "MCDC"), Darren S. Belton (at times, the "Plaintiff") sued, as relevant here, William M. Flint, Sr. (the "Defendant"), an MCDC "Captain/Jail Administrative [officer]" (Docket Entry 2 (the "Complaint") at 2). (See id. at 1-22.) According to Plaintiff's unverified Complaint (see id. at 11, 22), Defendant and other MCDC officials "have all been using food as a punishment by starving

---

    1  For legibility reasons, this Opinion uses standardized capitalization and omits bold and all-cap font in all quotations from the parties' materials. [Docket Entry page citations utilize the CM/ECF footer's pagination.]

[Plaintiff] everyday and others" (id. at 13) and have otherwise provided insufficient and nutritionally inadequate food to MCDC inmates, causing Plaintiff various health problems. (See id. at 12-22.) Through his Complaint, Plaintiff seeks monetary damages and injunctive relief requiring certain dietary measures at MCDC. (See id. at 20-22.) Reviewing the Complaint in compliance with 28 U.S.C. § 1915A (see Docket Entry 3 at 1), the Court (per Chief United States District Judge Catherine C. Eagles) allowed "[P]laintiff's claims against [D]efendant . . . alleging that [D]efendant . . . is serving . . . [P]laintiff an inadequate diet [to] proceed[,] but [dismissed] all other claims in the [C]omplaint" (Docket Entry 5 at 1).

Plaintiff subsequently transferred from MCDC, first to Tabor Correctional Institution (see Docket Entry 14 at 1) and then to Scotland Correctional Institution (see Docket Entry 19 at 1).[2] Thereafter, Defendant filed the Motion, "supported by the Affidavits of [Defendant], Serena Smedley, and Julia Dunnigan." (Docket Entry 21 at 1; see also Docket Entries 22-1 to 22-3.) That same day, the Clerk sent Plaintiff a Roseboro Notice, warning that:

> [Defendant] filed a Motion for Summary Judgment on 05/29/2024, which may or may not be supported by an affidavit.

---

2 Plaintiff's transfer from MCDC moots his request for injunctive relief. See, e.g., Rendelman v. Rouse, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there.").

> You have the right to file a 20-page response in opposition to the defendant(s)' motion(s). If defendant(s) filed a motion for summary judgment or filed affidavits, your response may be accompanied by affidavits setting out your version of any relevant disputed material facts or you may submit other responsive material. Your failure to respond or, if appropriate, to file affidavits or evidence in rebuttal within the allowed time may cause the [C]ourt to conclude that the defendant(s)' contentions are undisputed and/or that you no longer wish to pursue the matter. Therefore, unless you file a response in opposition to the defendant(s)' motion(s), it is likely your case will be dismissed or summary judgment granted in favor of the defendant(s). A response to a motion for summary judgment must be filed within 30 days from the date of service on you.
>
> Any response you file should be accompanied by a brief containing a concise statement of reasons for your opposition and a citation of authorities upon which you rely. You are reminded that affidavits must be made on personal knowledge, contain facts admissible in evidence and be made by one shown to be competent to testify. . . .

(Docket Entry 23 at 1.)

Despite this notice, Plaintiff did not respond to the Motion. (See Docket Entries dated May 29, 2024, to present (lacking filings from any party).) Thus, as relevant to the Motion, the record before the Court reflects the following:

Defendant avers:

> [He is] the Jail Administrator for the Moore County Detention Center, a position that [he] ha[s] held since 2017. As the Jail Administrator, [Defendant] oversee[s] the day-to-day operations of the Moore County Detention Center. At all times during [his] service with the Moore County Sheriff's Office, [Defendant] ha[s] been fully trained, qualified, and certified to serve as a Moore County Sheriff's Detention Officer holding the various ranks and positions that [he] ha[s] held, having completed and/or exceeded all training and certifications

3

required by the State of North Carolina, the North Carolina Sheriff's Education Training and Standards Division, and the Sheriff of Moore County to serve in good standing.

Although [Defendant] serve[s] as the Jail Administrator for the Moore County Detention Center, [Defendant is] not the individual who has final policy making authority for the Moore County Detention Center. Instead, that individual is Sheriff Ronnie Fields, the Sheriff of Moore County, who has the final policymaking authority for the Moore County Detention Center. Nevertheless, [Defendant] can attest that it is the policy of Ronnie Fields, the Sheriff of Moore County, that the Moore County Detention Center shall be operated in a manner consistent with the laws and regulations of the United States and of the State of North Carolina, to include the Constitution of the United States and the North Carolina Constitution. It is the policy of the Sheriff of Moore County that [the] Moore County Detention Center is and shall be a facility that is safe both for the inmates housed within it as well as for the Detention Staff.

Darren S. Belton, the [p]laintiff in this case, was formerly a pre-trial detainee in the Moore County Detention Center from August 19, 2022 until on or about October 5, 2023, when he was transferred to the custody of the State of North Carolina following his being convicted of numerous violent felony charges.

It is [Defendant's] understanding that [Plaintiff] claims in this lawsuit that he received an inadequate diet while he was detained in the Moore County Detention Center, and that [Defendant] was responsible for this allegedly inadequate diet. [Plaintiff's] claims are not true. The food that [Plaintiff] received in the Moore County Detention Center fully complied with the North Carolina Administrative Code and otherwise exceeded all applicable requirements for calories and nutrition.

For well over a decade, the Sheriff of Moore County has contracted with Aramark to serve as the food service provider for the Moore County Detention Center. Aramark is obligated to provide inmates with three meals a day that provide, at a minimum, at least 2500 calories per day in compliance with the requirements of the North Carolina Administrative Code, and which otherwise meet

the nutritional guidelines of the American Correctional Association and the National Academy of Sciences.

Aramark proposes standardized menus, usually in weekly increments, of the meals that are to be prepared and served to the inmates at the Moore County Detention Center. As the Jail Administrator, [Defendant] review[s] Aramark's proposed menus and provide[s] some suggestive input, which typically encompasses [Defendant] requesting, from time to time, the replacement of a proposed entree with another entree that, based upon [his] experience over time, has proven to be more popular with the inmate population. [Defendant] ha[s] been, and continue[s] to be, assured by the Aramark District Manager that the final menus are reviewed and approved by an Aramark dietician to ensure that the meals provided by Aramark to inmates far exceed 2,100 calories per day (the minimum required by the North Carolina Administrative Code) and that the meals also provide the required amounts of protein, calcium, iron, and other vitamins and nutrients. Indeed, [Defendant] ha[s] been and continue[s] to be regularly assured, in writing, that the meals provided by Aramark to inmates average 2,600 calories per day, which far exceeds the minimum level of 2,100 calories required by the North Carolina Administrative Code.

[Defendant] do[es] not have any involvement in the preparation of the meals served to inmates. Instead, the meals (which follow Aramark's weekly menu) are prepared by Aramark employees in the kitchen located at the Moore County Detention Center, with inmate trustees providing limited assistance, which is supervised, with regard to some tasks, such as placing the prepared food on serving trays.

[Defendant] do[es] not have any involvement in serving inmates their meals. Inmate meals, which are served on identical covered food trays, are handed out to inmates by rank-and-file Detention Officers, sometimes with the assistance of inmate trustees. Unless they have a medical condition confirmed by the contracted medical care provider or a religious conviction that warrants an alternative diet, all inmates eat the same meals as the other inmates.

The Moore County Detention Center is inspected twice a year by inspectors from the North Carolina Department

5

of Health and Human Services' Division of Health Service Regulation. Included in the scope of the State's inspection of the Moore County Detention Center is the quantity and quality of the food served to inmates, as well as the cleanliness and sanitation of the kitchen facilities, refrigerators, ice makers, etc. [Defendant is] not aware of State inspectors ever finding any deficiency regarding the quantity or quality of the food served to inmates, nor with the cleanliness or sanitation of the kitchen facilities, etc.

The Moore Count[y] Detention Center is inspected at least once a year by the Moore County Health Department. Included in the scope of this inspection is the quantity and quality of the food served to inmates, along with the cleanliness and sanitation of the kitchen facilities. [Defendant is] not aware of the Moore County Health Department ever finding any deficiency in the quantity or quality of the food served to inmates, nor with the cleanliness or sanitation of the kitchen facilities, etc.

The Moore Count[y] Detention Center is also inspected several times a year by the Moore County grand jury. [Defendant is] not aware of the grand jury ever finding any deficiency in the quantity or quality of the food served to inmates, nor with the cleanliness or sanitation of the kitchen facilities.

As part of Aramark's quality control and customer service program, Aramark will frequently send a district or regional manager to inspect their operations at the Moore County Detention Center to ensure that they are meeting their contractual obligations to the Sheriff of Moore County, as well as meeting internal Aramark policies and requirements.

[Defendant] frequently walk[s] through the kitchen in the Moore County Detention Center unannounced to observe Aramark's operations in order to satisfy [him]self that inmates are receiving food that complies with the requirements of the North Carolina Administrative Code and the contract between Aramark and the Sheriff of Moore County. [Defendant] occasionally will take photographs of the preparation of the inmate[s'] meals and how they are served on individual trays. At no time ha[s Defendant] found any reason to suspect or believe that the food prepared by Aramark and served to inmates in the Moore County Detention Center

6

was or is deficient in either its quantity or quality. [Defendant] do[es] not recall any instance in which the food provided to inmates by Aramark has been determined not to provide the amount of calories or overall nutritional requirements sufficient to satisfy the requirements of the North Carolina Administrative Code.

[Plaintiff] was an extremely difficult and highly disruptive inmate, one who seemed to always be upset with the conditions in the Moore County Detention Center. During the time that he was detained in the Moore County Detention Center, he frequently complained about the food he received, claiming that he did not like it and that he did not get enough food to satisfy his appetite. Whenever his complaints were brought to [Defendant's] attention, [Defendant] would talk to him directly about his concerns. Typical of [Plaintiff's] complaints was his anger whenever the food tray on which his meal was served did not contain food in each and every one of the five separate sections/indentations of the food tray, which sometimes happens whenever the meal in question does not contain or consist of five separate items. [Plaintiff] seemed to be convinced that if any of the five sections of the food tray were empty, that food was being withheld from him. [Defendant] tried to explain to [Plaintiff] that the amount of calories and nutrients contained in or provided by a given meal did not necessarily correspond with how many separate sections of the food tray were filled with food. However, [Defendant's] efforts were futile. [Plaintiff] could not seem to understand or come to terms with the fact that the food he received in the Moore County Detention Center was not an "all you can eat" or "have it your way" sort of affair. Instead, he complained about things like being served applesauce instead of some other fruit, or that the meat servings were not up to his standards. [Plaintiff] even asked to be served with a Kosher diet. When [Defendant] discussed this with him, [Plaintiff] could not answer [Defendant's] basic questions about what [Plaintiff] thought a Kosher diet was, what kind of food he expected such a diet would contain, and how he believed that his religious convictions warranted or required being served a Kosher diet. Instead, [Plaintiff] appeared to [Defendant] to simply believe that a Kosher diet would provide him with more food, and [food] which was more to his liking. Even though [Defendant] was not convinced of [Plaintiff's] religious sincerity, [Defendant] nevertheless approved

7

[Plaintiff's] diet being converted to a Kosher diet, which were [sic] also prepared by Aramark and required to meet the same requirements as regular meals. This accommodation still did not satisfy [Plaintiff]. To [Defendant's] recollection, [Plaintiff] switched back and forth between a Kosher diet and a non-Kosher diet four times, ultimately returning and staying with the regular diet served to other inmates.

During [Defendant's] tenure as the Jail Administrator for the Moore County Detention Center, [Defendant] ha[s] never received credible information to cause [Defendant] to believe that the meals served to inmates at the Moore County Detention Center, to include [Plaintiff], failed to provide an average of at least 2,100 calories per day or were otherwise deficient in the vitamins and nutrients they provided. Instead, [Defendant] ha[s] consistently received assurances from Aramark that their menus provided meals that averaged 2,600 calories a day and are otherwise nutritionally adequate. As [Defendant] noted above, the meals served to inmates and the kitchen facilities at the Moore County Detention Center are regularly inspected by a variety of State and local officials for compliance with applicable regulations and overall cleanliness. Again, to [Defendant's] knowledge, these inspections have never found any deficiencies.

It is [Defendant's] understanding that [Plaintiff] also claims in this lawsuit that he received a lesser amount of food than other inmates, or that food was otherwise withheld from him, as some form of punishment. This is absolutely false. At no time ha[s Defendant], nor any member of the Detention Staff to [Defendant's] knowledge, ever withheld food from [Plaintiff] or from any other inmate as a form of punishment or for any other reason.

At no time was [Defendant] ever informed by the Southern Health Partners medical staff (the contracted medical care provider) at the Moore County Detention Center or by any other medical care provider that [Plaintiff] was suffering from any medical issue associated with the diet or nutrition that he received while detained at the Moore County Detention Center. [Defendant is] not aware that [Plaintiff] was ever in any sort of medical distress or was otherwise suffering from any kind of medical condition or situation that was not

8

being adequately addressed by the Southern Health Partners medical staff.

> At all times during the performance of [Defendant's] duties as Jail Administrator for the Moore County Detention Center, and particularly with respect to [Plaintiff], [Defendant] acted in good faith and without malice or corruption. At all times during the performance of [his] duties, [Defendant] did [his] best to follow all applicable laws, rules, policies, and regulations, performing [his] duties to the best of [his] abilities. [Defendant] never had any credible reason to believe that [Plaintiff], []or any other inmate, was not receiving sufficient nutrition and calories while detained in the Moore County Detention Center. [Defendant] was not then, nor [is he] now, aware of any action or inaction on [Defendant's] part which was inappropriate or that violated [Plaintiff's] rights in any manner.

(Docket Entry 22-1, ¶¶ 2-19 (internal paragraph numbering omitted).)

In turn, Serena Smedley attests:

"[She is] currently employed by Aramark . . . as the Food Service Director at the Moore County Detention Center." (Docket Entry 22-2, ¶ 2.) "[She] ha[s] worked in food service for twenty-five (25) years" (id., ¶ 3), and her "job duties at the Moore County Detention Center include supervising the kitchen and the meal preparation process" (id., ¶ 4). "Aramark provides food service to the Moore County Detention Center in accordance with the parties' contract." (Id., ¶ 5.)

"In [her] role as Food Service Director, [she is] familiar with the menus for the meals served at the Moore County Detention Center." (Id., ¶ 6). "The general population menus that were

9

utilized by Aramark at the Moore County Detention Center during 2022, 2023, as well as at the present time, were and are reviewed and approved by a licensed Aramark dietician, as well as the Moore County Detention Center." (Id., ¶ 7.) "The general population menus that were utilized by Aramark at the Moore County Detention Center during 2022, 2023, as well as at the present time, met and continue to meet all applicable caloric and nutritional requirements for inmates and were and continue to be adequate to maintain good health." (Id., ¶ 8.) Additionally:

> The general population menus that were utilized by Aramark at the Moore County Detention Center during 2022, 2023, as well as at the present time, provided and continue to provide a weekly average of two thousand six hundred (2,600) calories per day, and met and continue to meet or exceed, the applicable nutritional guidelines of the State of North Carolina Administrative Code, the American Correctional Association, and the National Academy of Sciences. Moreover, the menus provided, and continue to provide, adequate levels of protein, vitamin A, vitamin C, calcium, and iron as required by the State of North Carolina, the American Correctional Association, and the National Academy of Sciences.
>
> The general population menus that were utilized by Aramark at the Moore County Detention Center during 2022, 2023, as well as at the present time, constituted and continue to constitute a nutritionally adequate diet that is prepared and served under conditions which do not present a danger to the health and well-being of the inmates who consumer it.
>
> The Aramark recipes for the general population menus are almost always followed to the letter, except in the rare instance where a substitute food item is used because of an issue with supply or unavailability. In those rare instances when a substitute is required, a food item of equal or greater nutritional value is used.

(Id., ¶¶ 9-11 (internal paragraph numbering omitted).)

10

"Aramark oversees the production of requested food trays for the inmates and the loading of the food trays onto carts for delivery to the inmates throughout the Moore County Detention Center."  (Id., ¶ 12.)  "Aramark does not handle the food trays once they leave the kitchen.  At that point, the Detention Staff of the Moore County Detention assume responsibility for ensuring that the food trays are actually delivered to the inmates."  (Id., ¶ 13.)

For her part, Julia Dunnigan avers:

"[She is] currently employed by Aramark . . . as a Nutritional and Operation Support Senior Manager."  (Docket Entry 22-3, ¶ 2.)  "In [her] capacity as a Nutrition and Operational Support Senior Manager, [she is] familiar with the menus for the meals served at the Moore County Detention Center."  (Id., ¶ 4.)  "As a Nutrition and Operational Support Senior Manager, [she is] a registered and licensed dietician."  (Id., ¶ 5.)  "[She] ha[s] reviewed the Aramark general population menus that were utilized by Aramark at the Moore County Detention Center during 2022, 2023, as well as at the present time."  (Id., ¶ 6.)  "Those menus provided, and continue to provide, inmates at the [MCDC] with a weekly average of two thousand six hundred (2,600) calories per day and met, and continue to meet, the nutritional guidelines of the State of North Carolina, the American Correctional Association, and the National Academy of Sciences."  (Id.)  "Moreover, the menus provided, and

11

continue to provide, adequate levels of protein, vitamin A, vitamin C, calcium, and iron as required by the State of North Carolina, the American Correctional Association, and the National Academy of Sciences." (Id.) "The menus for [the] Moore County Detention Center provide inmates with a nutritionally adequate diet that does not present a danger to the health and well-being of the inmates who consume the food provided by Aramark." (Id., ¶ 7.) Finally,

> [she] ha[s] no reason to believe that the meals provided by Aramark to inmates at the Moore County Detention Center did not, or do not, comply with the published Aramark general population menus or otherwise fail to comply with the applicable requirements of the State of North Carolina, the American Correctional Association, the National Academy of Sciences, or any other relevant authority.

(Id., ¶ 8.)

## DISCUSSION

### I. Relevant Standards

#### A. Summary Judgment

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[3] A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for

---

[3] "[I]n considering a motion for summary judgment, the district court *must* review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." Robinson v. Wix Filtration Corp., 599 F.3d 403, 409 n.8 (4th Cir. 2010) (emphasis in original) (internal quotation marks omitted).

12

the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant bears the burden of establishing the absence of such dispute. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In analyzing a summary judgment motion, the Court "tak[es] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). In other words, the nonmoving "party is entitled to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, and all internal conflicts in it resolved favorably to him." Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (brackets and internal quotation marks omitted). If, applying this standard, the Court "find[s] that a reasonable jury could return a verdict for [the nonmoving party], then a genuine factual dispute exists and summary judgment is improper." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996).

Nevertheless, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. Moreover, "the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment." Lewis v. Eagleton, No. 4:08cv2800, 2010 WL 755636, at *5 (D.S.C. Feb. 26, 2010) (citing Baber v.

13

Hospital Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992)), aff'd, 404 F. App'x 740 (4th Cir. 2010). Further, factual allegations in a complaint or other court filing constitute evidence for summary judgment purposes only if sworn or otherwise made under penalty of perjury. See Reeves v. Hubbard, No. 1:08cv721, 2011 WL 4499099, at *5 n.14 (M.D.N.C. Sept. 27, 2011), recommendation adopted, slip op. (M.D.N.C. Nov. 21, 2011).

### B. Fourteenth Amendment Standards

"It is well-established that inmates must be provided nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985) (internal quotation marks omitted). Thus, "[a]llegations of inadequate food for human nutritional needs or unsanitary food service facilities are sufficient to state a cognizable constitutional claim, so long as the deprivation is serious and the defendant is deliberately indifferent to the need." Wilson v. Johnson, 385 F. App'x 319, 320 (4th Cir. 2010) (citation omitted).

Relevant here, "pretrial detainees can state a claim under the Fourteenth Amendment, based on a purely objective standard, for prison officials' deliberate indifference to excessive risks of harm." Short v. Hartman, 87 F.4th 593, 604-05 (4th Cir. 2023). As the United States Court of Appeals for the Fourth Circuit has

14

explained, "[t]he Fourteenth Amendment Due Process Clause protects pretrial detainees from 'governmental action' that is not 'rationally related to a legitimate nonpunitive governmental purpose' or that is 'excessive in relation to that purpose.'" Id. at 608-09 (quoting Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015)) (citations omitted). "That test is 'solely an objective one.'" Id. (quoting Kingsley, 576 U.S. at 397). Under this standard, "it is sufficient that the plaintiff show that the defendant's action or inaction was, in *Kingsley*'s words, 'objectively unreasonable,' 576 U.S. at 397: that is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly." Short, 87 F.4th at 611 (parallel citation omitted). "Or as the Supreme Court put it . . ., it is enough that the plaintiff show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 836 (1994)). Nevertheless, "it is still not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee." Id. at 611-12.

## II. Analysis

### A. Preliminary Matter

As an initial matter, the certificates of service on Defendant's Notice of Intent to File Dispositive Motion, his

15

Motion, and his supporting memorandum all bear the incorrect terminal digits in Plaintiff's street number and zip code. (Compare Docket Entry 19 at 1 (reflecting address of "2238**5** McGirt's Bridge R[oa]d[,] Laurinburg, NC 2835**3**" (emphasis added)), with Docket Entry 20 at 2 (reflecting address of "2238**3** McGirts [sic] Bridge Road[,] Laurinburg, NC 2835**2**" (emphasis added)), and Docket Entry 21 at 3 (same), and Docket Entry 22 at 24 (same).) However, Defendant's certificates of service include an inmate number and the location "Scotland Correctional Institution" in Plaintiff's address (see Docket Entry 20 at 2; Docket Entry 21 at 3; Docket Entry 22 at 24), increasing the likelihood of delivery. Notably, Defendant's materials utilize the same address as defense materials filed in another ongoing matter involving Plaintiff, see, e.g., Belton v. Fields, No. 1:23cv169, Docket Entry 37 at 3 (M.D.N.C. Apr. 26, 2024); id., Docket Entry 40 at 3 (M.D.N.C. Apr. 26, 2024), which materials Plaintiff received, as evidenced by his subsequent motion for extension of time to respond thereto, see id., Docket Entry 43 at 1-2 (M.D.N.C. May 20, 2024). The record contains no indication that Plaintiff did not also receive Defendant's mailings. (See Docket Entries dated May 6, 2024, to present (lacking any indication that Defendant received any mailings returned as undeliverable).)

Moreover, the Roseboro Notice bears the correct street number and zip code for Plaintiff (see Docket Entry 23 at 1), ensuring

16

that Plaintiff received notification of the Motion. Nevertheless, Plaintiff filed nothing in response to the Roseboro Notice indicating that he did not receive the Motion. (See Docket Entries dated May 29, 2024, to present.) Additionally, the Court must evaluate the Motion regardless of Plaintiff's failure to respond thereto, see Robinson v. Wix Filtration Corp., 599 F.3d 403, 409 n.8 (4th Cir. 2010), and Plaintiff will receive an opportunity to object to this Opinion, see 28 U.S.C. § 636(b). Accordingly, consideration of the Motion remains appropriate notwithstanding the typographical errors in the certificates of service.

### B. Constitutional Claim

According to Plaintiff, Defendant provided nutritionally inadequate food and withheld food as a punishment during Plaintiff's pretrial incarceration at MCDC. (See Docket Entry 2 at 12-22.) However, because Plaintiff did not verify his Complaint (see id. at 1-22) or otherwise attest to its contents as true under penalty of perjury, see Nissho-Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1306 (5th Cir. 1988) (explaining that 28 U.S.C. § 1746 "permits unsworn declarations to substitute for an affiant's oath if the statement contained therein is made 'under penalty of perjury' and verified as 'true and correct'"), the Complaint's unsworn allegations do not constitute evidence for summary judgment purposes, see In re French, 499 F.3d 345, 358 (4th Cir. 2007) (Whitney, J., concurring); Reeves, 2011 WL 4499099, at *5 n.14.

17

As Plaintiff failed to verify his Complaint or otherwise submit any sworn statements in support of his allegations, the record contains no evidence supporting Plaintiff's assertions. See Reeves, 2011 WL 4499099, at *5 n.14 (explaining that unsworn statements do not constitute evidence for summary judgment purposes). Instead, the only evidence in the record reflects that MCDC officials provided nutritionally appropriate food to all inmates, including Plaintiff, and never used food as a punishment. (See Docket Entries 22-1 to 22-3.) Accordingly, Plaintiff's fourteenth-amendment claims against Defendant fail as a matter of law, warranting summary judgment in Defendant's favor.[4]

## CONCLUSION

The record establishes that Defendant did not violate Plaintiff's constitutional rights.

---

[4] Plaintiff sued Defendant in both his individual and official capacities. (See Docket Entry 2 at 2.) "Because Plaintiff has presented insufficient evidence to survive summary judgment as to an underlying constitutional violation," Plaintiff's claim against Defendant "in [his] official capacit[y] necessarily fail[s] as well." Robinson v. Bowser, No. 1:12cv301, 2013 WL 4503368, at *14 (M.D.N.C. Aug. 22, 2013), report and recommendation adopted in part, rejected in nonrelevant part, No. 1:12cv301, 2013 WL 5655434 (M.D.N.C. Oct. 16, 2013); see also, e.g., Russ v. Causey, 732 F. Supp. 2d 589, 604 (E.D.N.C. 2010) (explaining that an official-capacity "claim fails as a matter of law where there is no underlying constitutional violation"), aff'd, 468 F. App'x 267 (4th Cir. 2012).

18

Case 1:23-cv-00452-CCE-LPA   Document 24   Filed 01/21/25   Page 18 of 19

**IT IS THEREFORE RECOMMENDED** that the Motion (Docket Entry 21) be granted.

This 21st day of January, 2025.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**